CLINTON J. ANGELLE

VERSUS

J. TERRELL WILLIAMS, RICHARD G.
ANGELLE, VERNON DE JAGER,
TRANSFER SYSTEMS HOLDINGS, INC.
TRANSFER SYSTEMS INTERNATIONAL,
INC. and TRANSFER SYSTEMS
INTERNATIONAL (UK) LIMITED

14TH JUDICIAL DISTRICT COURT

DOCKET NO. 2000 3552 DIV. H

PARISH OF CALCASIEU

SCANNED JUL 10 2000

STATE OF LOUISIANA

Cv 0 0 - 1 7 9 5
FILED
AUG - 2 2000
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
DEPUTY

---

## PETITION FOR DAMAGES, FOR
## RESCISSION OF CONTRACT AND FOR INJUNCTIVE RELIEF

The petition of Clinton J. Angelle ("Clint Angelle"), domiciled in the Parish of St.

Martin, State of Louisiana, with respect represents that:

### THE DEFENDANTS

1.

Made defendants in this action are:

a.  J. Terrell Williams ("Williams"), an individual of the full age of majority domiciled

in the Parish of Calcasieu, State of Louisiana.

b.  Richard G. Angelle ("Richard Angelle"), an individual of the full age of majority

domiciled at 203 Starling Lane, Lafayette, Louisiana 70508 who may be served at

the same address

c.  Veron De Jager ("De Jager"), an individual of the full age of majority domiciled at

109 Hilton Road, Aberdeen, Scotland AB24 4HX who may be served pursuant to

the Long-Arm Statute, La. R.S. 13:3201 *et seq.* at the same address.

d.  Transfer Systems Holdings, Inc. ("TSH"), a Louisiana corporation having its

registered office and principal place of business at 2 River Lane, Lake Charles,

Louisiana 70605 that may be served through its registered agent for service of

process, Jack G. Wheeler 4350 Nelson Road, Lake Charles, Louisiana 70605.

e.  Transfer Systems International, Inc. ("TSI"), a Louisiana corporation having its

registered office at 5615 Highway 90 East, Lake Charles, Louisiana 70615 that may

be served through its registered agent for service of process, Neil G. Vincent, 1015

St. John Street, Lafayette, Louisiana 70501.

FILED 7/3/00

Bonnie Dickson

Deputy Clerk of Court

PROCESSED

1

f.   Transfer Systems International (UK) Limited ("TSI UK"), a foreign corporation

that may be served pursuant to the Long-Arm Statute, La. R.S. 13:3201 *et seq.*,

through its registered agent for service of process, Messrs Stronachs, DX AB 41,

Aberdeen, Scotland.

2.

Defendants Williams, Richard Angelle, De Jager, TSH, TSI and TSI UK are jointly

and solidarily liable to plaintiff as follows:

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

3.

Clint Angelle is the inventor of proprietary technology relating to the handling of waste

material generated from the drilling of oil and gas wells.  The core of the proprietary

technology centers around a unique pump and impeller design, which enables the pumping of

large quantities of drilling waste containing solid material.

4.

On December 12, 1995, Clint Angelle filed the first of a series of patent applications in

the U.S. Patent and Trademark Office to protect his proprietary technology.

5.

On September 2, 1997, the U.S. Patent and Trademark Office awarded Clint Angelle

U.S. Patent No. 5,662,807, entitled "Apparatus and Method for Handling Waste." A copy of

the '807 patent is attached as Exhibit A.

6.

On April 23, 1997, Clint Angelle filed a continuation-in-part patent application in the

U.S. Patent and Trademark Office to obtain additional protection for his proprietary

technology.

7.

On December 8, 1998, the U.S. Patent and Trademark Office awarded Clint Angelle

U.S. Patent No. 5,846,440, entitled "Apparatus and Method for Handling Waste."  A copy of

the '440 patent is attached as Exhibit B.

8.

On July 17, 1998, Clint Angelle filed a second continuation-in-part patent application in the U.S. Patent and Trademark Office to protect additional features of his proprietary technology.

9.

On May 5, 2000, Clint Angelle filed a divisional patent application in the U.S. Patent and Trademark Office to protect still further features of his proprietary technology including the pump and impeller design.

10.

During the pendency of Clint Angelle's patent applications in the U.S. Patent and Trademark Office, the applications are held in the strictest confidence and access to them is restricted to only Clint Angelle and his patent attorneys.

11.

Clint Angelle's proprietary technology comprises confidential and trade secret information from which Clint Angelle derived independent economic value from it not generally being known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

12.

At all times relevant, Clint Angelle took reasonable measures and efforts under the circumstances to maintain the secrecy of his proprietary technology.  Such measures included requiring his machinists to sign confidentiality agreements and safeguarding the trade secret information by not disclosing it to potential competitors.

13.

On or about February 1998, Richard Angelle, acting as Williams' intermediary, approached Clint Angelle for the purpose of inquiring whether Clint Angelle had any interest in forming a business relationship with Williams to commercially exploit Clint Angelle's proprietary technology.  On information and belief, Richard Angelle, at the time, was an employee of Williams' company, Nu-Tec.

14.

On or about March 1998, Clint Angelle met with Richard Angelle and De Jager at Clint Angelle's facility in Breaux Bridge, Louisiana.  On information and belief, De Jager, at the time, was an employee of Williams' company, Nu-Tec.  During the meeting Clint Angelle demonstrated his waste handling equipment to Richard Angelle and De Jager but did not permit them to closely inspect the equipment, disassemble it, or otherwise acquire knowledge of Clint Angelle's trade secrets relating to the proprietary equipment.

15.

On or about April 1998, Clint Angelle met with Williams at Clint Angelle's facility in Breaux Bridge, Louisiana so that Clint Angelle could demonstrate his proprietary equipment to Williams.  During the demonstration, Clint Angelle showed his proprietary equipment to Williams but did not permit Williams to closely inspect the equipment, disassemble it, or otherwise acquire knowledge of Client Angelle's trade secrets relating to the proprietary equipment.

16.

On or about May 1998, Clint Angelle visited Williams at his Nu-Tec facility in Aberdeen, Scotland for the purpose of further exploring a possible business opportunity with Williams and to evaluate the potential customer base for the proprietary equipment in the North Sea.

17.

On or about June 12, 1998, Clint Angelle and Williams entered into a letter of intent for purposes of agreeing to form a joint venture to commercially exploit Clint Angelle's proprietary technology.  As a part of the letter of intent, Clint Angelle and Williams agreed to form a corporation that was to be 51% owned by Clint Angelle and 49% owned by Williams. The letter of intent also provided that Clint Angelle would grant the corporation an exclusive license to Clint Angelle's proprietary technology and patent rights for use on a world-wide basis in drilling and production operations for oil and gas, except in the continental United States, continental Mexico and continental Venezuela.

18.

The letter of intent also provided that the corporation to be formed would manufacture or own equipment embodying Clint Angelle's proprietary technology and patent rights and would lease such equipment to one or more operating companies. The corporation would generate revenues from the lease of the equipment and such revenues would be distributed to Clint Angelle and Williams after loans and expenses were paid.

19.

In accordance with the letter of intent, Clint Angelle and Williams formed TSH on July 30, 1998.

20.

On July 29, 1998, the following persons were elected officers of TSH by written consent in lieu of the first meeting of the Board of Directors:  President – Williams; Executive Vice President – Clint Angelle; Secretary/Treasurer – Richard Angelle.

21.

At all times relevant, TSH has been managed by its president, Williams.

22.

On July 29, 1998, Clint Angelle and Williams entered into a Shareholder's Agreement for TSH that provided that the revenues of the corporation derived from the lease of Clint Angelle's proprietary technology and patent rights will be distributed as follows:

a.  The first revenues received by TSH, which shall equal one-third (1/3) of the published price list of TSH, shall be paid to Williams until he has been repaid any loans he makes to TSH for the manufacture of equipment to be leased by TSH.  Any such loans shall be secured by a security interest in the equipment owned by TSH.

b.  The remaining two-thirds (2/3) of such revenues shall be used to pay any taxes and operating expenses that may be incurred by TSH.  The remaining portion of such two-thirds (2/3), to the extent declared by TSH's Board of Directors to be payable as a dividend, shall be paid to Clint Angelle and Williams as follows: 60% to Clint Angelle and 40% to Williams.

    c.    After loans to Williams have been repaid by TSH, the one-third (1/3) of the gross revenues used to pay Williams' loans shall, to the extent declared by TSH's Board of Directors to be payable as a dividend, be paid to Clint Angelle and Williams as follows: 50% to Clint Angelle and 50% to Williams.

A copy of the Shareholder's Agreement is attached as Exhibit C.

23.

Also on July 29, 1998, Clint Angelle and TSH entered into an Exclusive License Agreement in which Clint Angelle granted TSH an exclusive, worldwide license to commercially exploit his proprietary technology and patent rights except in the continental United States, continental Mexico and continental Venezuela for oil and gas drilling and production and completion operations. Specifically, TSH was granted the right and license under Clint Angelle's proprietary technology and patent rights to do the following:

    a.    To manufacture, have manufactured, use, market, lease, offer for lease, sell and offer for sale the Licensed Products.

    b.    To grant TSI a sublicense under Clint Angelle's proprietary technology and patent rights to use, market, lease and offer for lease the Licensed Products.

    c.    To grant TSI a sublicense under Clint Angelle's proprietary technology and patent rights to manufacture the Licensed products throughout the world.

A copy of the Exclusive License Agreement is attached as Exhibit D.

24.

The Exclusive License Agreement provided that Clint Angelle would be compensated by ownership of 51% of the stock of TSH which permitted him to participate in the sharing of TSH's revenue pursuant to the Shareholder's Agreement.

25.

The Exclusive License Agreement also obligated TSH to promptly inform Clint Angelle of any suspected infringement of his proprietary technology and patent rights or any misuse, misappropriation, theft or breach of confidence thereof. The obligation to report any infringement, misuse, theft or breach of confidence was made part of the Exclusive License Agreement to safeguard Clint Angelle's proprietary technology and patent rights from unlawful use and misappropriation. TSH is required to report any such unlawful activity to Clint

Angelle so that he can take steps to stop such activity.  In the case of an infringement of his proprietary technology, the reporting obligation is particularly important because it would provide Clint Angelle an opportunity to modify his pending patent applications to ensure that the applications cover the infringing product.

26.

The Exclusive License Agreement also obligated TSH to maintain Clint Angelle's proprietary technology and patent rights in confidence.  The obligation of confidence was included in the agreement to safeguard Clint Angelle's proprietary technology from unlawful misappropriation, disclosure and use by others who would exploit the technology in competition with Clint Angelle and to his detriment.

27.

Williams signed the Exclusive License Agreement as president of TSH.

28.

On information and belief, Williams and Richard Angelle caused TSI to be formed on July 13, 1998.

29.

On information and belief, Williams and Richard Angelle own TSI.

30.

On information and belief, Richard Angelle is the president of TSI.

31.

TSI was formed by Williams and Richard Angelle to function as an operating company that would not only lease Clint Angelle's proprietary equipment to oil companies in the North Sea but also provide service personnel to operate the equipment.  In order to reduce TSI's costs, Clint Angelle agreed to let TSI manufacture his proprietary equipment in Scotland.  By manufacturing the proprietary equipment in Scotland, TSI would not have to pay transportation costs and port of entry duties in Scotland, which costs and duties are expensive particularly given the size and bulk of the equipment.  Therefore, TSI was given a sublicense to manufacture the equipment.

32.

On August 10, 1998, TSH and TSI entered into a Sublicense Agreement.  As part of the agreement, TSH granted TSI an exclusive, worldwide (except for the continental United States, Mexico and Venezuela) right and license to do the following:

a.    To manufacture, have manufactured, use, market, lease, offer for lease, sell and offer for sale the Licensed Products.

b.    To grant sublicenses under Clint Angelle's proprietary technology and patent rights to use, market, lease and offer for lease the Licensed Products.

c.    To manufacture the Licensed Products throughout the world.

A copy of the Sublicense Agreement is attached as Exhibit E.

33.

The Sublicense Agreement between TSH and TSI provided that as consideration for the grant of the rights conveyed by TSH to TSI, TSH would receive rental and lease payments from TSI for equipment furnished to it and "receive the benefit of promotion" of the proprietary equipment by TSI.  Clint Angelle understood from representations made by Williams and Richard Angelle and from the terms of the Sublicense Agreement that he would share in the revenues generated by TSI from the lease of the equipment it manufactured in the same pro rata share as specified in the Exclusive License Agreement and in the Shareholder's Agreement.

34.

The Sublicense Agreement was signed by Williams as president of TSH and by Richard Angelle as president of TSI.

35

The Sublicense Agreement also purports to grant TSI the right to grant sublicenses to others to use, market, lease and offer for lease the Licensed Products.  The grant of such right to grant sublicenses to TSI is a violation of Clint Angelle's exclusive license with TSH, which does not give TSH the authority or right to grant TSI the right to grant further sublicenses.

36.

At the time, Clint Angelle understood, based on statements made by Williams, Richard Angelle and De Jager, that De Jager was working for Williams and Richard Angelle as an employee of TSI in addition to his employment with Williams' company, Nu-Tec.

37.

Only after the confidentiality obligation of the exclusive license was binding did Clint Angelle provide Williams, Richard Angelle and De Jager with his proprietary equipment so that they could examine the equipment in detail and begin manufacturing and leasing the equipment to customers in the North Sea.  While the confidentiality obligation of the exclusive license was binding, Clint Angelle also disclosed other trade secret information of a technical nature to Williams, Richard Angelle and De Jager to assist them in the manufacture and use of the proprietary equipment as part of their commercial operations in the North Sea.

38.

At the time of the disclosure of his proprietary equipment and other trade secret information to Williams, Richard Angelle and De Jager, Clint Angelle understood that the proprietary equipment and trade secret information would be used by Williams, Richard Angelle and De Jager as part of their TSI business in Aberdeen, Scotland.

39.

On or about October 1998, Clint Angelle learned that Williams, Richard Angelle and De Jager were modifying his proprietary equipment by replacing the metal tracking system with a plastic wheel tracking system and that the modified equipment would be used on a Mobil platform in the North Sea.  Clint Angelle voiced his concern to Williams, Richard Angelle and De Jager that the modification would not function properly and could pose a risk.

40.

Despite Clint Angelle's protestations, Williams, Richard Angelle and De Jager employed the modified waste handling equipment on the Mobil platform.  On information and belief, the plastic wheel tracking mechanism failed and a TSI employee was injured.

41.

In addition to Mobil, TSI leased the modified equipment to other oil companies operating in the North Sea.  Based on statements made by Richard Angelle, TSI received seed

money from Mobil and Shell to modify the equipment.  TSH partially paid Clint Angelle a share of its revenues generated from TSI's lease of the equipment through July 1999 based on the pro rata share specified in the Exclusive License Agreement and Shareholder's Agreement. The amount Clint Angelle received as a result of the lease of equipment by TSI is $15,960.10. Additional money is due but has not been paid.

42.

In the summer of 1999, Williams and Richard Angelle leased Clint Angelle's proprietary equipment through TSI for use in an application in continental Venezuela relating to oil and gas drilling and production and completion operations.  Because the exclusive license did not grant them the right or license to use Clint Angelle's proprietary technology in continental Venezuela for oil and gas drilling and production and completion operations, Williams, Richard Angelle and TSI violated the Exclusive License Agreement.

43.

On information and belief, prior to entering into a business relationship with Clint Angelle, Williams, Richard Angelle and De Jager had no prior experience or knowledge regarding waste transfer systems using a pump disposed on a handling member.

**THE DEFENDANTS' ACTS**

44.

On August 20, 1998, Williams, Richard Angelle and De Jager, on information and belief, caused Mountwest 181 Limited, a United Kingdom corporation, to change its name to TSI UK.  On information and belief, Mountwest 181 Limited was incorporated in the United Kingdom on May 15, 1998.

45.

Williams, Richard Angelle and De Jager's formation of TSI UK was without the knowledge of Clint Angelle.

46.

On or about November 1999, Richard Angelle met with Clint Angelle.  During this meeting, Richard Angelle told Clint Angelle that TSI UK existed and that Williams, Richard Angelle and De Jager were manufacturing and leasing equipment through TSI UK that had been further modified after the problems encountered on the Mobil platform referred to in

10

paragraph 40 above by eliminating the tracking system and adding a further discharge outlet to the pump.  On information and belief, Williams, Richard Angelle and De Jager had leased the modified equipment through TSI UK to various oil companies including Shell, Exxon, Mobil and Diamond Drilling.  At the time of such modifications, Williams, Richard Angelle or De Jager did not notify Clint Angelle of these additional modifications, seek his technical assistance or approval even though he repeatedly requested such information, or inform him that they were leasing the modified equipment through TSI UK.

47.

Also during the November 1999 meeting, Richard Angelle told Clint Angelle that Williams, Richard Angelle and De Jager had filed a United States patent application and a United Kingdom patent application for the equipment being manufactured and leased through TSI UK.  After acquiring such knowledge, Clint Angelle attempted unsuccessfully to obtain further information from Williams, Richard Angelle and De Jager about their operations through TSI UK and about the patent applications they filed.

48.

Despite Clint Angelle's attempts to obtain additional information, Williams, Richard Angelle and De Jager refused to provide additional details regarding the specifics of their activities.

49.

Williams and Richard Angelle did finally agree to meet with Clint Angelle.  During a January 2000 meeting, Williams for the first time informed Clint Angelle that Williams, Richard Angelle, De Jager, Brian Williams and Colin Moir are owners of TSI UK.  Also during this meeting, Williams for the first time informed Clint Angelle that De Jager is the general manager of TSI UK.

50.

On or about April 2000, Richard Angelle did show Clint Angelle a TSI UK brochure containing a depiction of the equipment.

51.

Clint Angelle recently obtained records from the United Kingdom Patent Office indicating that Williams, Richard Angelle and De Jager filed a United Kingdom patent

application in the name of TSI UK on April 29, 1999, entitled "Pump." Williams, Richard Angelle and De Jager did not at the time notify Clint Angelle that they had filed a UK patent application.

52.

On information and belief, the subject matter of the UK patent application incorporates Clint Angelle's proprietary technology and trade secrets. By filing the UK patent application, Williams, Richard Angelle and De Jager have sought to further appropriate Clint Angelle's proprietary technology and trade secrets by falsely claiming rights to the technology and information.

53.

On information and belief, the modified equipment manufactured and leased by Williams, Richard Angelle and De Jager through TSI UK embodies or employs Clint Angelle's proprietary technology and trade secrets.

54.

On information and belief, Williams, Richard Angelle and De Jager improperly disclosed and used Clint Angelle's proprietary and trade secret information to modify the waste handling equipment commercialized through TSI UK. By using Clint Angelle's proprietary technology and trade secrets, Williams, Richard Angelle and De Jager were able to modify Clint Angelle's proprietary equipment and commercially exploit the equipment in the North Sea without the participation of Clint Angelle, TSH or TSI, in a short span of time, thereby gaining an unfair competitive advantage for their new company, TSI UK.

55.

On information and belief, Williams, Richard Angelle and De Jager continue to manufacture and lease modified equipment which embodies or employs Clint Angelle's proprietary technology and trade secrets through TSI UK.

56.

On information and belief, Williams, Richard Angelle, De Jager and/or TSI UK have received lease payments and other revenue from the commercialization of Clint Angelle's proprietary equipment. Despite receiving such revenues, the defendants have failed to compensate Clint Angelle for such commercialization of his proprietary equipment.

12

57.

Williams, Richard Angelle and De Jager's manufacturing and leasing of waste handling equipment embodying or employing Clint Angelle's proprietary technology and trade secrets is in direct competition with and in contravention of Clint Angelle's interests.

58.

On information and belief, Williams, Richard Angelle and De Jager's acts as aforesaid were undertaken to purposely avoid the obligations of the exclusive license and of the agreement among the parties that Clint Angelle would share in the revenue generated by TSI and have caused Clint Angelle to suffer damages.

## COUNT I

## BREACH OF CONTRACT

59.

Defendants Williams, Richard Angelle, De Jager, TSH, TSI and/or TSI UK's acts of failing to compensate Clint Angelle for the use of his proprietary technology, of commercializing the proprietary technology in non-licensed territories, of failing to notify Clint Angelle of the improper disclosure, use and infringement of his proprietary technology and trade secrets, of diverting Clint Angelle's proprietary technology to TSI UK and of exploiting the technology in direct competition with the interests of Clint Angelle constitute a breach of the Exclusive License Agreement and understanding among the parties entitling Clint Angelle to a rescission of the Exclusive License Agreement and the recovery of damages resulting from the breach as well as attorneys' fees pursuant to the agreement and costs.

## COUNT II

## BREACH OF OBLIGATION TO DEAL IN GOOD FAITH

60.

Defendants Williams, Richard Angelle, De Jager, TSH, TSI and/or TSI UK's acts of improperly disclosing and using Clint Angelle's proprietary technology and trade secrets and the commercial exploitation of the technology and trade secrets without payment of compensation to Clint Angelle and in non-licensed territories are in breach of the implied obligation of good faith dealing entitling Clint Angelle to damages.

## COUNT III

## DETRIMENTAL RELIANCE

### 61.

Clint Angelle's reasonable reliance on Williams, Richard Angelle, De Jager, TSH and/or TSI's assurances of future payments for the commercialization of his proprietary technology and trade secrets in countries other than the continental United States, continental Mexico and continental Venezuela caused Clint Angelle to rely to his detriment by foregoing any commercialization of his proprietary technology and trade secrets in other countries, either individually or through another licensee. Clint Angelle relied to his detriment while Williams, Richard Angelle, De Jager, TSI and TSI UK profited from his proprietary technology and trade secrets without compensation being paid to Clint Angelle.

## COUNT IV

## UNJUST ENRICHMENT

### 62.

Defendants Williams, Richard Angelle, De Jager, TSI and/or TSI UK have been unjustly enriched at the expense of Clint Angelle as a result of their commercialization of waste handling equipment that embodies or employs Clint Angelle's proprietary technology and trade secrets.

## COUNT V

## UNFAIR TRADE PRACTICES

### 63.

Defendants Williams, Richard Angelle, De Jager, TSH, TSI and/or TSI UK's improper disclosure and use of Clint Angelle's proprietary technology and trade secrets and their formation and operation of TSI UK to commercially exploit the technology and trade secrets in competition with the interest of Clint Angelle violates Louisiana's Unfair Trade Practices and Consumer Protect Law, La. R.S. 51:1405, entitling Clint Angelle to recover his actual damages, reasonable attorneys' fees and costs.

## COUNT VI

## TRADE SECRET VIOLATION

64.

Defendants Williams, Richard Angelle, De Jager, TSH, TSI and/or TSI UK's improper disclosure and use of Clint Angelle's proprietary technology and trade secrets violates Louisiana's Uniform Trade Secrets Act, La. R.S. 51:1431 et seq., entitling Clint Angelle to an injunction prohibiting Williams, Richard Angelle, De Jager, TSH, TSI and TSI UK from manufacturing, using or commercializing waste handling equipment embodying or employing Clint Angelle's proprietary technology or trade secrets and to the recovery of damages.  Clint Angelle is also entitled to recover his attorneys' fees pursuant to the statute.

## COUNT VII

## TORTIOUS CONDUCT

65.

Defendants Williams, Richard Angelle, De Jager, TSH, TSI, and/or TSI UK are liable to Clint Angelle under La. C.C. art. 2315 entitling Clint Angelle to recover damages resulting from the tortious acts of Williams, Richard Angelle and De Jager as aforesaid.

## JURY DEMAND

66.

Clint Angelle demands a trial by jury of all issues so triable.

**WHEREFORE,** the plaintiff Clinton J. Angelle prays that the defendants J. Terrell Williams, Richard G. Angelle, Vernon De Jager, Transfer Systems Holdings, Inc., Transfer Systems International, Inc. and Transfer Systems International (UK) Limited, be served with copies of this Petition for Damages and duly cited to appear and answer same and that, after all legal delays and proceedings are had, there be judgment in favor of Clinton J. Angelle and against the defendants, jointly and solidarily, as follows:

1.  For rescission of the Exclusive License Agreement dated July 29, 1998 by and between Clinton J. Angelle and Transfer Systems Holdings, Inc.

2.  For damages in the full sum to which Clint Angelle is entitled, as may be found reasonable and appropriate in the premises, together with legal interest from the date of demand.

15

3.    For injunctive relief prohibiting the J. Terrell Williams, Richard G. Angelle, Vernon De Jager, Transfer Systems Holdings, Inc., Transfer Systems International, Inc. and Transfer Systems International (UK) Limited and each of their officers, directors, agents, employees, representatives, assigns and successors and all those acting on behalf of or in concert with any of them from using or disclosing proprietary technology or trade secrets belonging to Clint Angelle and from manufacturing, using, marketing, leasing and selling waste handling equipment of the type presently being commercialized by them.

4.    For judgment ordering J. Terrell Williams, Richard G. Angelle, Vernon De Jager, Transfer Systems Holdings, Inc., Transfer Systems International, Inc. and Transfer Systems International (UK) Limited to return to Clinton J. Angelle all equipment, materials and/or documents employing, embodying or containing proprietary technology or trade secrets belonging to Clinton J. Angelle, including the pumps and impellers presently being commercialized by them.

5.    For judgment ordering the defendants to make a full and complete accounting of all revenue derived by defendants J. Terrell Williams, Richard G. Angelle, Vernon De Jager, Transfer Systems Holdings, Inc., Transfer Systems International, Inc. and/or Transfer Systems International (UK) Limited from the sale, lease, commercialization or other use of waste handling equipment or technology in any way utilizing Clint Angelle's proprietary technology and trade secrets and for judgment ordering the payment of all sums due to Clinton J. Angelle as a result of the sale, lease, commercialization or other use of waste handling equipment or technology in any way utilizing Clint Angelle's proprietary technology and trade secrets.

6.    For all general and equitable relief to which Clinton J. Angelle may be entitled.

7.    For reasonable attorneys' fees and all costs.

Respectfully submitted,

_____
Charles R. Minyard, Bar #9660
FNB Towers, Suite 501
600 Jefferson Street
Lafayette, Louisiana 70501
(337) 266-2300

_____
Robert L. Waddell, Bar # 23586
C. Dean Domingue, Bar # 18588
Domingue & Waddell, PLC
FNB Towers, Suite 515, Box 75
600 Jefferson Street
Lafayette, Louisiana 70501
(337) 266-2304
Attorneys for Petitioner

**Please Serve:**

**J. Terrell Williams**
2 River Lane
Lake Charles, Louisiana 70605
(work address)

**Richard G. Angelle**
203 Starling Lane
Lafayette, Louisiana  70508

**Vernon De Jager**
109 Hilton Road
Aberdeen AB24 4HX
Scotland
**(Via Long-Arm Statute)**

**Transfer Systems Holdings, Inc.**
Through its registered agent for process
Jack G. Wheeler
4350 Nelson Road
Lake Charles, Louisiana 70605

**Transfer Systems International, Inc.**
Through its registered agent for process
Neil G. Vincent
1015 St. John Street
Lafayette, Louisiana 70501

**Transfer Systems International (UK) Limited**
Through its registered agent for process
Messrs Stronachs
Aberdeen DX  AB 41
Scotland
**(Via Long-Arm Statute)**

| | |
|---|---|
| CLINTON J. ANGELLE | 14TH JUDICIAL DISTRICT COURT |
| VERSUS | |
| | DOCKET NO.              DIV. |
| J. TERRELL WILLIAMS, RICHARD G. | |
| ANGELLE, VERNON DE JAGER, | |
| TRANSFER SYSTEMS HOLDINGS, INC. | PARISH OF CALCASIEU |
| TRANSFER SYSTEMS INTERNATIONAL, | |
| INC. and TRANSFER SYSTEMS | |
| INTERNATIONAL (UK) LIMITED | STATE OF LOUISIANA |

---

# VERIFICATION

STATE OF LOUISIANA

PARISH OF LAFAYETTE

**BEFORE ME** the undersigned Notary Public, duly commissioned and qualified in the

aforesaid Parish and State, came and appeared:

**CLINTON J. ANGELLE**

who, after being duly sworn, did depose and say:

That he is the petitioner in the above styled and numbered cause and that he has read

the petition filed in this cause and that all allegations of fact are true to the best of his

knowledge, information and belief.

_____
CLINTON J. ANGELLE

**SWORN TO AND SUBSCRIBED** before me this 3rd day of ___July___ 2000.

_____
NOTARY PUBLIC

CLINTON J. ANGELLE

VERSUS

J. TERRELL WILLIAMS, RICHARD G.
ANGELLE, VERNON DE JAGER,
TRANSFER SYSTEMS HOLDINGS, INC.
TRANSFER SYSTEMS INTERNATIONAL,
INC. and TRANSFER SYSTEMS
INTERNATIONAL (UK) LIMITED

14TH JUDICIAL DISTRICT COURT

DOCKET NO.                    DIV.

PARISH OF CALCASIEU

STATE OF LOUISIANA

## REQUEST FOR NOTICE

Pursuant to Louisiana Code of Civil Procedure article 1572, the undersigned request

written notice of the date set for trial of the above numbered and entitled cause, or of the date set

for trial of any pleadings or motions, at least ten days before any trial date.

The undersigned further request notice of the signing of any final judgment or of the

rendition of any interlocutory order or judgment in this cause as provided by Louisiana Code of

Civil Procedure articles 1913 and 1914.

Respectfully submitted,

Charles R. Minyard, Bar #9660
FNB Towers, Suite 501
600 Jefferson Street
Lafayette, Louisiana 70501
(337) 266-2300

Robert L. Waddell, Bar #23586
C. Dean Domingue, Bar # 18588
Domingue & Waddell, PLC
FNB Towers, Suite 515, Box 75
600 Jefferson Street
Lafayette, Louisiana 70501
(337) 266-2304
Attorneys for Petitioner

FILED 7 3/00

Bonnie Dickson

1

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

## NOTICE OF DOCUMENTS NOT FILED IN THE RECORD

**CIVIL CASE NO.        2:00cv1795**

**CLINTON J. ANGELLE**

**VS.**

**J TERRELL WILLIAMS, ET AL**

**ATTACHMENTS TO COMPLAINT**

**FILED BY: Plaintiff on 8/2/00 IN THE ABOVE CAPTIONED CASE HAVE BEEN PLACED IN AN ACCORDIAN FOLDER.**

**DOCUMENT NO 1**

**BETH PREST
DEPUTY CLERK**